IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MATTIE R. SMITH
     Plaintiff,

v.                            Case No. 3:12-cv-325/CJK

CAROLYN W. COLVIN[1]
Commissioner of Social Security,
     Defendant.

---

## MEMORANDUM ORDER

     This case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Mattie Smith's application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83. Ms. Smith will be referred to by name, as claimant, or as plaintiff. The parties have consented to Magistrate Judge jurisdiction, pursuant to 28 U.S.C. § 636(c), and FEDERAL RULE OF CIVIL PROCEDURE 73, for all proceedings in this case, including entry of final judgment. (Doc. 9).

     Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence. The

---

[1] Carolyn W. Colvin succeeded Michael J. Astrue as Commissioner of Social Security, and is automatically substituted as the defendant. FED. R. CIV. P. 25(d).

decision of the Commissioner, therefore, should be affirmed, and the application for benefits denied.

## PROCEDURAL HISTORY

Claimant has filed a Title II application for a period of disability and disability insurance benefits. T. 21.[2] Claimant also filed a Title XVI application for supplemental security income. T. 21. Her applications were denied initially on November 12, 2008, and upon reconsideration on January 29, 2009. T. 10. Claimant then requested, and appeared at, a hearing before an Administrative Law Judge (ALJ) on July 29, 2010. T. 21. Following this hearing, the ALJ issued an order unfavorable to Ms. Smith. T. 18. The Appeals Council of the Social Security Administration subsequently denied review. T. 1. The ALJ's order then became the final decision of the defendant Commissioner.

## FINDINGS OF THE ALJ

In the written decision the ALJ made a number of findings relative to the issues raised in this appeal:

3.      The claimant has the following severe impairments: hypothyroid, diabetes mellitus type II, sacroilitis, HPV, ovarian cysts, asthmatic bronchitis, anemia, osteoarthritis, arthralgia, fatigue, urticaria and cystitis.

5.      [T]he undersigned finds that the claimant has the residual functional capacity to perform medium work . . . involving lifting/carrying 50 pounds occasionally

---

[2] The administrative record, as filed by the Commissioner, consists of 11 volumes (docs. 12-1 through 12-11), and has 791 consecutively numbered pages. References to the record will be by "T." for transcript, followed by the page number.

to 25 pounds frequently. During an 8-hour workday, the claimant can sit for 4 hours and stand or walk for 4 hours, with occasional bending and not more than moderate exposure to pulmonary irritants such as fumes, dust and gases with some moderate deficits to concentration and pace which would limit her to the performance of only routine and repetitive tasks.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

T. 23-27.

In her memorandum of law, claimant raises four issues: 1) the ALJ erred in finding that claimant is capable of performing medium work, 2) the ALJ failed to properly apply the pain standard, 3) the ALJ failed to properly consider claimant's credibility, and 4) the ALJ failed to properly assess the claimant's ability to alternate sitting and standing as required by SSR 96-9p. T. 6, 8, 12, 15.

<u>STANDARD OF REVIEW</u>

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied by the ALJ. *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson*

*v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said, "'Substantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (quoting *Lewis*, 125 F.3d at1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). The reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary[.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Nevertheless, a reviewing court may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). In sum, review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[3] The recitation of medical and historical facts of this case, as set out below, is based upon my independent review.

---

[3] The Eleventh Circuit speaks not only of independent review of the administrative record, but reminds us it conducts *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[4] To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1.  If the claimant is performing substantial gainful activity, she is not disabled.

2.  If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.  If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

---

[4] Claimant is seeking both Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83. For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). All references to statutes and rules in this order will be to those addressing Disability Insurance Benefits.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *See* 20 C.F.R. § 404.1512. The Eleventh Circuit has explained the operation of step five. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations. *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) ('The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act')).").

Step five (or step four in cases where the ALJ decides a claimant can perform her past work) is where the rubber meets the road. At that point, the ALJ formulates the all-important residual functional capacity. Even where one or more severe impairments are established, the claimant must show that she cannot perform work within that residual functional capacity. The ALJ establishes residual functional

capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain). Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five.[5] "[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[6] 20 CFR § 404.1545(a)(1). Often both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict, and that conflict leads, as in this case, to the points raised on judicial review by many disappointed claimants.

<u>FACT BACKGROUND AND MEDICAL HISTORY</u>[7]

---

[5] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps." 20 C.F.R. § 404.1520(a)(4).

[6] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity. We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. (See § 404.1512(c).) However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. (See §§ 404.1512(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.) We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons. (See paragraph (e) of this section and § 404.1529.)[.]

20 C.F.R. § 404.1545(a)(3).

[7] Although intended to be thorough, and to provide an overview of claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as called for in the Analysis

At the hearing, Ms. Smith testified she lives with her two sons and brother. T. 39. Ms Smith weighs about 192 pounds and is about 5 feet 3 inches in height. T. 40. She "probably" reached the ninth grade and never received a GED. T. 40-41. As of the date of the hearing, Ms. Smith had not worked for five or six years. T. 43. She previously worked as a food service worker in a nursing home. T. 44. Ms. Smith has a breathing problem and doesn't have enough "wind," causing her to tire quickly. T. 45. Her doctor prescribed her Singulair and Advair. T. 46. Plaintiff also has thyroid problems and was prescribed Synthroid. T. 47. Her medications make her go to sleep and make her head hurt "real bad." T. 55. Plaintiff also takes medication for her diabetes. T. 55.

Plaintiff does not do "too much of nothing" during the day because she lacks the necessary "wind" and energy to get up and move around. T. 47. She is able to put clothes in the dryer, put dishes away, drive places, shop for groceries, and cook. T. 48. She tries to do yard work, but has to sit down frequently because she is out of breathe. T. 48. Ms. Smith also has lower back problems. Her doctor prescribed Lortab 10 and sent her to a physical therapist. T. 52. She estimates her back pain on an average day is an eight or nine on a scale of zero to ten. T. 53. On occasion, claimant will have days that are worse than normal and stays in bed. T. 53. She will occasionally sleep for "days" because of the pain. T. 53. She experiences this more severe back pain "probably three times out of a week." T. 53. Claimant estimates she can stand, generally, for a period of about twenty-five to thirty minutes at a time before getting out of breathe. T. 53. She has to sit down for fifteen to twenty minutes after standing for so long. T. 53. She also can't sit for too long. T. 54. Plaintiff

section.

estimates she can sit for between twenty-five and forty-five minutes before she has to change positions. T. 54. Ms. Smith does not smoke cigarettes. T. 56.

Vocational expert Barry Murphy considered a hypothetical involving someone with the same age, education, and work background as the claimant, with the additional physical limitations noted by Dr. Sam Greenlee (sitting for four hours in a day, standing for four hours in a day, occasional bending and/or stopping movements, occasional environmental problems, and lifting fifty pounds occasionally and twenty-five pounds frequently), and determined that claimant could not perform past relevant work. T. 58-59. Vocational expert Murphy noted that the sitting/stand option was the basis for his belief that claimant could not perform her past work. T. 59. He did find, however, that there were medium, unskilled jobs, suitable to plaintiff's sitting/standing and environmental restrictions, including hand packager. T. 59. Vocational expert Murphy also found, considering Dr. Greenlee's limitations and a light work classification, that plaintiff was capable of performing jobs such as a non-postal mail clerk and bench assembler. T. 59-60. In a second hypothetical, vocational expert Murphy considered the same individual as in the first hypothetical, but with the added limitation of an inability to perform the activities of pushing or pulling with the left upper extremity, except for reaching. T. 60. Mr. Murphy found such an individual capable of performing the jobs of hand packager, mail clerk, and probably bench assembler. T. 60. For hypothetical number three, vocational expert Murphy assumed the same individual, but added the limitation that the individual should not work at unprotected heights or operate dangerous machinery because of "possible sedation from side effects and fatigue, et cetera." T. 60-61. He found that individual capable of performing the jobs of hand packager, mail clerk, and bench

assembler.  T. 61.  For hypothetical number four, vocational expert Murphy assumed the same individual as before, but further assumed this individual had more severe pain, fatigue, side effects, and other factors, resulting in a more marked impairment of concentration, persistence, and pace.  T. 61.  This individual's limitations would cause the individual to be off task, or at an unproductive pace, ten to twenty percent of the work day.  T. 61.  Vocational expert Murphy concluded that this individual would not be capable of performing any of the previously listed jobs, nor would such an individual be able to "perform [or] sustain any work activity."  T. 61.  The ALJ also questioned Murphy about the requirement of a sit/stand option, leading Murphy to posit that he tailored his recommendations to those jobs that have a stool or chair option.  T. 62.

Plaintiff, in a questionnaire completed January 5, 2005, noted that her pain ranges from thirty minutes a day to one hour to all day.  T. 188.  Plaintiff noted that she does not take any medication for the pain.  T. 188.  Plaintiff listed her pain as a 10 on a scale of 1-10 in a supplemental pain questionnaire given on October 7, 2008.  T. 269.  She stated that she has pain every day and is in pain when she bends over, stands too long, walks too long, or sits too long.  T. 269.  For pain, she takes Tylenol, but it doesn't help.  T. 269.  Ms. Smith also indicated that her lower leg, back, and head all hurt "all the time."  T. 269.  She can walk "sometimes," sit for twenty-five to thirty-five minutes, and stand for forty minutes before her leg hurts.  T. 270.  She is able to do laundry, clean the house, and cook once or twice a week.  T. 271.  She will clean the yard and shop once a week.  T. 271.  Plaintiff's sister, in a supplemental third party pain questionnaire, stated that plaintiff has frequent nausea and her head

hurts a lot. T. 273. Plaintiff's sister indicated that plaintiff only takes over the counter medication and that "it do [sic] not help." T. 273.

Ms. Smith was initially seen by Dr. Ziad Mamish from June 28, 1996 through 2005. T. 339-53, 470. Dr. Mamish was primarily concerned with plaintiff's thyroid, finding plaintiff had a toxic nodular goiter plus severe exophthalmopathy. T. 350. In June 2000, Dr. Mamish noted that plaintiff's type II diabetes mellitus was "poorly controlled" and also recommended radioactive iodine to treat plaintiff's severe hyperthyroidism. T. 347. He also recommended plaintiff start taking insulin. T. 339. Dr. Mamish marked that plaintiff was awake and well oriented, and well developed. T. 344.

Dr. Crawford Cleveland treated Ms. Smith for hives. T. 360. Dr. Cleveland noted an unspecified thyroid disease and diagnosed plaintiff with an idopathic urticaria. T. 362. In a follow-up for idiopathic urticaria, Dr. Cleveland noted that plaintiff continues to break out if not on medication. T. 356. In a follow up visit on November 22, 2004, Dr. Cleveland noted the improvement of plaintiff's hives, plaintiff's increased tiredness, and that plaintiff is on insulin for her diabetes and Synthroid for her Graves' disease. T. 355.

Chiropractor Thomas Roberts saw plaintiff from September 17, 2003, through May 19, 2004. T. 365-427. Dr. Roberts saw the patient following a motor vehicle accident on September 14, 2003. T. 427. Dr. Roberts noted plaintiff's complaints of "pain and stiffness in her neck, mid and lower back." T. 427. Dr. Roberts also indicated complaints of muscle spasms and rigidity in her cervical, thoracic and lumbar spine. T. 427. Dr. Roberts found plaintiff had lower back pain with the pain radiating to her SI joints bilaterally, rigidity and decreased range of motion of the

lumber spine, spasms in her sacrospinalis muscle group in her lumbar spine, tenderness at the "L5/S1," and upper back pain with pain radiating to the upper extremities. T. 365-427. He would often treat her with chiropractic manipulation to the full spine, heat packs and percussion massage to the full spine, and some variation of interferential therapy. T. 365-427. Dr. John Sowers, at Dr. Roberts' request, administered an MRI to plaintiff's lumbar spine. T. 433. Dr. Sower, based on the MRI, found "mild disc desiccation" and "shallow annular bulge L5-S1." T. 433.

On April 28, 2005, Dr. Arineta Speer evaluated claimant for complaints of "lower back pain and thyroid." T. 458. Dr. Speer noted tenderness in the lumbar-sacral area at the L-S junction. T. 460. Dr. Speer diagnosed Ms. Smith with lower lumbar back pain, osteoarthiritis, arthalgias, mild anxiety, and elevated blood pressure. T. 461. Dr. Speer also noted limitations on plaintiff's ability to function, as well limitations with with "standing, walking, sitting, bending, and lifting," all related to the diagnoses of osteoarthiritis and arthralgia. T. 461. Dr. Speer also listed plaintiff's range of motion for various body parts. T. 462-64. She offered no conclusion of disability or indication plaintiff would be unable to perform certain types of occupations.

A physical residual functional capacity assessment conducted by Larsen Gloria, a medical consultant for the state agency, on July 27, 2005, concluded that "except for extension of the lumbar spine, all other ROM measurements were within normal limits." T. 504. Ms. Gloria noted no postural limitations. T. 501. Ms. Gloria also found plaintiff capable of occasionally lifting or carrying 50 pounds, frequently lifting or carrying 25 pounds, standing or walking a total of 6 hours in an 8 hour workday, and sitting with normal breaks for a total of about 6 hours in an 8 hour

workday. T. 500. Ms. Gloria's findings mirror those of other medical consultants for the state agency–Bret Jeffrey, T. 527-34, Breneta Boyd, T. 652-59, and John Dawson. T. 695-702.

Dr. Samuel Greenlee performed a physical capacities evaluation on the plaintiff and determined plaintiff can lift fifty pounds occasionally and twenty-five pounds frequently, can sit for four hours a day, and stand for four hours a day. T. 764. In terms of day to day work activities, Dr. Greenlee found plaintiff was limited to occasionally bending/stooping and had some limitations with environmental problems. T. 764. Dr. Greenlee also administered a transabdominal and endovaginal pelvic ultrasound and noted the presence of bilateral ovarian cysts. T. 788. Dr. Greenlee prescribed Lortab 10 for Ms. Smith on two occasions–March 15, 2010 and April 23, 2010. T. 782-83. Ms. Smith was also prescribed Lortab 7.5 following a Baptist Health Care emergency visit on October 8, 2007.[8] T. 647.

On July 15, 2009, Ms. Smith visited the Pulmonary and Sleep Clinic. T. 775. Dr. Jack Obeid examined Ms. Smith for shortness of breath with intermittent wheezing. T. 775. Dr. Obeid believed the shortness of breathe was probably from asthmatic bronchitis and prescribed her Advair and recommended the continued use of an Albuterol inhaler. T. 775.

<u>ANALYSIS</u>

---

[8] Ms. Smith's own admissions and the record as a whole support only that she was prescribed Lortab in limited instances, T. 647, 782-83. The record indicates Ms. Smith was relying, for the most part, on non-prescription pain medication. T. 224, 248, 261, 265, 269, 273, 297, 321, 361, 459, 730, 740.

In her memorandum of law, claimant raises four issues: 1) the ALJ erred in finding that claimant is capable of performing medium work, 2) the ALJ failed to properly apply the pain standard, 3) the ALJ failed to properly consider claimant's credibility, and 4) the ALJ failed to properly assess the claimant's ability to alternate sitting and standing as required by SSR 96-9p. T. 6, 8, 12, 15. The court will address the issues in turn.

Claimant's first point–the ALJ's determination that Ms. Smith is capable of performing medium work is unsupported by substantial evidence–is unpersuasive. Medium works is defined as:

> [L]ifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping . . . . Flexibility of the knees as well as the torso is important for this activity . . . . [T]here are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10. Contrary to claimant's contention, the ALJ did not determine that claimant could "perform the standing/walking requirement of 6 hours out of an 8 hour working day." (Doc. 14, p. 7). Instead, the ALJ found claimant to have a residual functional capacity (RFC) of "lifting/carrying 50 pounds occasionally to 25 pounds frequently," and "sit[ting] for 4 hours and stand[ing] or walk[ing] for 4 hours, with occasional bending . . . ." T. 23. The ALJ's assessed RFC is consistent with Dr. Greenlee's conclusions, as well as the other objective medical evidence of record. Dr. Greenlee, importantly, is the only doctor who specified claimant had such restrictive limitations–walking/standing for four hours and sitting for four hours in an eight hour workday. Dr. Speer, meanwhile, indicated that Ms. Smith has limitations with "standing, walking, sitting, bending and lifting," but did not specify the extent of those limitations, whether such limitations are disabling, or if such limitations would be more restrictive than the restrictions imposed by Dr. Greenlee. In fact, the ALJ appears to have formulated plaintiff's RFC based upon the most restrictive medical opinion of record, Dr. Greenlee. No information from the other doctors, the residual functional capacity assessments, or the MRI, indicated any meaningful limitations on plaintiff's ability to work. The ALJ's determination of plaintiff's RFC, therefore, is consistent with and substantially supported by the objective medical evidence of record.

Plaintiff's second issue–that the ALJ erred by failing to properly apply the pain standard–is inevitably intertwined with plaintiff's third claim–the ALJ failed to properly consider plaintiff's credibility. (Doc. 14, p. 6). As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on

symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929.  The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[9] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Adamo v. Comm'r of Soc. Sec.,* 365 F. App'x 209 (11th Cir. 2010) (*quoting Wilson*); *Elam v. R.R. Retirement Bd*., 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson*, 284 F.3d at 1226.  Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.  The standard set out in 404.1529 reads in relevant part:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory

---

[9] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you . . . . We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work (or if you are a child, your functioning).

****

Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present . . . . At the administrative law judge hearing or Appeals Council level of the administrative review process, the adjudicator(s) may ask for and consider the opinion of a medical or psychological expert concerning whether your impairment(s) could reasonably be expected to produce your alleged symptoms. The finding that your impairment(s) could reasonably be expected to produce your pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of your symptoms. We will develop evidence regarding the possibility of a medically determinable mental impairment when we have information to suggest that such an impairment exists, and you allege pain or other symptoms but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms

\*\*\*\*

> When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work. In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you. We also consider the medical opinions of your treating source and other medical opinions

20 C.F.R. § 404.1529(a)-(c)(1).

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(*citing Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1259 (M.D. Fla. 2005). The presence or absence of evidence to support symptoms of the severity claimed is, however, a factor that can be considered. *Marbury*, 957 F.2d at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor*, 786 F.2d at 1054. Where she fails to do so, the Eleventh Circuit has

stated that it would hold as a matter of law that the testimony is accepted as true. *Holt*, 921 F.2d at 1223; *MacGregor*, 786 F.2d at 1054[10]. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210. And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Dep't of Health and Human Serv's*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F. Supp. 2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Such complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow*

---

[10]In *MacGregor*, the court said:
> If the Secretary refuses to credit such testimony he must do so explicitly and give reasons for that decision. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir.1982). Where he fails to do so we hold as a matter of law that he has accepted that testimony as true.

786 F. 2d at 1054. Relying upon the earlier case of *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir.1982), however, courts in the Eleventh Circuit are now generally opting for remand in cases of inadequate credibility determinations (as well as cases involving rejection of treating physician opinion). *E.g. Lawton v. Comm'r*,431 Fed. Appx. 830, 835, 2011 WL 2471475, *4 (11th Cir. June 22, 2011); *see also Albery v. Comm'r*, 2012 WL 2589297. *10 (M. D. Fla. June 7, 2012) ("The Eleventh Circuit has recently receded from [the *MacGregor*] language.").

*v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[11]   People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand,* 761 F.2d at 1548-49.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here, Ms. Smith claims that her pain is a ten on a scale of zero to ten.  T. 269. At the hearing, Ms. Smith estimated her back pain is, on an average day, at an eight or nine on a scale of zero to ten.  T. 53.  She will occasionally sleep for "days on days" because of the pain.  T. 53.  Ms. Smith also claims she has pain everyday and is in pain when she bends over, stands too long, walks too long, or sits too long.  T. 269.  Ms. Smith, however, indicated that she takes no pain medication as recently as

---

[11] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

2005, T. 189, and for several years took only Tylenol to relieve the pain. T. 269. Ms. Smith was prescribed Lortab on three separate occasions, once in 2007 by Baptist Health and twice by Dr. Greenlee in 2010. Use of Tylenol, with occasional prescriptions of Lortab, indicates conservative treatment.

No medical opinion of record concludes the claimant is disabled and unable to work. In fact, Dr. Greenlee's findings limit the claimant in only a few respects, namely the hours needed to sit or stand, environmental problems, and the frequent use of bending and/or stopping movements. T. 764. Dr. Greenlee found plaintiff capable of performing activities that would be classified as medium work (as defined by SSR 83-10). Dr. Roberts utilized chiropractic manipulation, heat packs, and inferential therapy in treating plaintiff's back and neck problems. Dr. Roberts' treatment of plaintiff's back and neck pain is conservative given plaintiff's claims of severe, disabling pain. The MRI of plaintiff's back showed only mild disc desiccation and shallow annular bulge L5-S1. T. 433. From the record, Ms. Smith seems to have stopped receiving any substantial treatment for her neck and back pain in recent years, except for the occasional Lortab prescription. In short, the dramatic complaints of pain are out of proportion to both the objective findings, and the treatment rendered.

Plaintiff's complaint of pelvic pain stemming from ovarian cysts appears to be an isolated incident that has been resolved, as no further medical records indicate ongoing treatment. Plaintiff's hives and thyroid problem would not typically cause the severity of pain plaintiff claims. Importantly, plaintiff does not claim her severe pain stems from those conditions. Additionally, none of the physicians treating those conditions expressed the belief that such conditions would be disabling or result in

debilitating pain. Dr. Obeid determined plaintiff "[p]robably" had asthmatic bronchitis and noted only "some discomfort in her chest . . . ." T. 775. Plaintiff was prescribed various prescription medications for the aforementioned conditions, but none of the prescribed medications indicate, or are directed for, plaintiff's claimed degree of pain.

The ALJ, nevertheless, recognized and accepted many of plaintiff's complaints of pain and impairments. T. 23. The ALJ discounted plaintiff's stated level of pain, however, finding that the "intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." T. 24-25. As the foregoing discussion evidences, plaintiff's subjective complaints of pain are not consistent with the objective medical of evidence of record. Because plaintiff's complaints of pain are not supported by the objective medical evidence to the degree plaintiff contends, the ALJ properly discounted plaintiff's credibility. Further, the ALJ properly considered plaintiff's claims of the intensity and persistence of her pain in assessing the credibility and claimed level of pain. *See* 20 C.F.R. § 404.1529(a)-(c). The ALJ concluded that plaintiff's claims concerning the intensity and persistence of her pain were not consistent with the objective evidence; as a result, the ALJ found that plaintiff's pain was not disabling. Moreover, the ALJ explicitly listed her reasons for discounting plaintiff's credibility, noting that the claims of persistence and intensity were inconsistent with the assessed RFC (which was consistent with the objective medical evidence of record).

Finally, plaintiff's fourth claim–that the ALJ failed to properly assess plaintiff's ability to alternate sitting and standing as required by SSR 96-9p–also fails. (Doc.

14, p. 6). The ALJ, at the hearing, was cognizant of plaintiff's need for a sit/stand option. T. 61. Vocational expert Murphy indicated that he based his occupational assessments on jobs that have a stool or chair, and therefore, inherently have a sit/stand option. T. 61-62. The ALJ specifically tailored the RFC to Dr. Greenlee's limitations of four hours standing and four hours sitting. T. 23-24. The RFC's limitations indicate the frequency with which plaintiff would need to alternate sitting and standing. On a final note, nothing in the record indicates that Ms. Smith cannot work an eight hour day given the specified sit/stand options.

Based upon the foregoing analysis, the decision is in compliance with appropriate legal standards. *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

ACCORDINGLY, it is ORDERED:

1. The decision of the defendant Commissioner is AFFIRMED and plaintiff's application for Disability Insurance Benefits and Supplemental Security Income is DENIED.

2. The clerk is directed to close the file.

At Pensacola, Florida, this 21st day of May, 2013.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**